MARÍA McCORMICK DE SERRANO, Plaintiff and Appellee, *v.* ADELA McCORMICK DE WATSON ET AL., Defendants and Appellants.

No. 8807.   Argued November 9, 1944.—Decided December 14, 1944.

*Dubón & Ochoteco* and *Otero Suro & Otero Suro* for appellants.   *E. Martínez Rivera* and *L. Blanco Lugo* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

On March 29, 1939, the District Court of San Juan granted a complaint which sought the nullity of the judgment rendered by that same court on February 15, 1930, approving the partition of the estate of Harry McCormick. In the second action, some of the defendants were summoned personally and others by the publication of edicts, to wit: (*a*) Eduardo Otto McCormick; Hortensia Dalmau; Eduardo,

William, Josefina, Hortensia, and Dolores McCormick Dalmau, represented by their father with *patria potestas,* Eduardo Otto McCormick; Edith McCormick de Muñoz and her children José, Fernando, Aida, Carlos, and Roberto Muñoz McCormick, the first three represented by their father with *patria potestas,* José Muñoz Vázquez; and said José Muñoz Vázquez and Edith McCormick de Muñoz as the only heirs of the deceased defendant, Aida Muñoz McCormick, were summoned personally; and (b) Helen Kierman McCormick, Catalina, and Muriel Kierman McCormick and Catalina McCormick, for herself, and as mother with *patria potestas* over her minor daughter Helen Kierman McCormick; and Adela McCormick de Watson, James W. Watson, and their minor children Adela Watson McCormick, Edith Watson McCormick, and William Wilford Watson McCormick, were summoned by edicts. The latter failed to appear and default was entered against them on March 15, 1938.

On June 16, 1942, the appeal of the defendants surnamed McCormick Dalmau and Muñoz McCormick, who were summoned personally, was dismissed by this court on the ground that it had been taken after the expiration of the statutory term [*McCormick* v. *McCormick et al.,* 60 *D.P.R.* 949 (*per curiam* decision] and on April 28, 1943, the judgment was reversed as to four of the defendants who were summoned by edicts and who appealed [1]—Helen Kierman McCormick, Catalina, and Muriel Kierman McCormick and Catalina McCormick—on the ground that the same had been rendered without jurisdiction, inasmuch as they had not been duly summoned. *McCormick* v. *McCormick,* 61 P.R.R. 812.

In view of this, the defendants who were summoned personally and whose appeal was dismissed by this court, filed a motion in the lower court praying that the judgment ren-

---

[1] The other defendants who were summoned by edicts—Adela McCormick de Watson, James W. Watson, and their children Adela Watson McCormick, Edith Watson McCormick, and William Wilford Watson McCormick—did not appeal from the judgment of the district court.

dered against them on March 29, 1939, be set aside, and alleged, in substance that in view of the fact that the judgment was void as to four of the defendants who were unduly summoned, the same could not subsist as to the other defendants, because of the very nature of the partition, as said judgment had to affect in like manner all the heirs of Harry McCormick; they further alleged that the judgment entered against the heirs surnamed Watson McCormick, who were unduly summoned but did not appeal, was void because of lack of jurisdiction.

The District Court of San Juan issued an order dismissing the motion and the defendant petitioners have taken the present appeal.

When the judgment in this case was reversed in so far as it affected the only appellants herein, surnamed Kierman McCormick, the same question involved in the present appeal, was raised by them but we then refused to decide it and stated the following:

"(2) Further, the defendants argue with regard to the judgment the nullity of which was decreed in this action and which refers to a partition of her hereditary rights, that if said judgment is reversed it must be so with regard to all the defendants, since the partition is a unity and it can not be maintained that the partition is valid as to some of the defendants and invalid as to others.

"We can not advance or express an opinion about this question, since we face the fact that the appeal taken by the other defendants· was dismissed by this court on June 12, 1942, and the mandate sent to the court below. With regard to them, and also to the defendants surnamed Watson McCormick who did not appeal, the judgment is final. They are the ones affected by said judgment and it is they, and not the defendants herein, who must raise in the court below whatever may be proper regarding the effect and the scope of the reversal of the judgment as to the defendants Kierman Mc-Cormick, as affecting their rights." (*McCormick* v. *McCormick*, 61 P.R.R. 812.)

Based on the above pronouncement, the defendants surnamed McCormick Dalmau and Muñoz McCormick prayed

the lower court to set aside the judgment in its entirety. The lower court denied their motion and relied on the doctrine that ''in actions against several defendants jointly, where the defense interposed by the answering defendant is not personal to himself, that is, where it goes to the whole right of the plaintiff to recover at all, if successful, it inures to the benefit of all the defendants, which doctrine is set forth in 78 A.L.R. 939 . . .'' and considered that the jurisdictional defense pleaded by the defendants surnamed Kierman McCormick could not inure to the benefit of the other defendants because the same was of a personal and not of a general character. From the citation of 78 A.L.R. 939 we quote at the foot of this page [2] the first paragraph in order to show that the question raised and discussed in the annotation is not applicable to the facts of the case at bar. It refers to cases in which the defense successfully alleged by one of several answering codefendants inures to the benefit of a defaulting defendant. The situation herein is the opposite. The default judgment was entered against the codefendants who alleged lack of jurisdiction on the part of the court to render the judgment annulling the partition decreed and approved by that same court. It is true, as stated by the lower court in its order appealed from, that the appellants herein submitted to its jurisdiction. Does this mean, however, that the judgment rendered should and may subsist as to those defendants and not as to the defendants surnamed Kierman McCormick and Watson McCormick?

The appellants contend that since the partition is a unit by virtue of which is destroyed the universality or community of property which existed up to the time of the partition among all the heirs of the deceased, said partition may not validly subsist as to four defendant heirs and be void as to the other defendant heirs.

[2] ''The question whether a successful defense by some of several codefendants may inure to the benefit of a *defaulting* defendant is dependent upon the nature, scope, and extent of the defense interposed by the answering defendants, and, to some extent, upon the joint or several nature of the right asserted.''

In our opinion here lies the real gist of the question involved. We must bear in mind that the judgment rendered in this case in 1939 expressly declared "null and void the judgment rendered by this court on February 15, 1930 . . . in so far as said judgment purported to make a partition of the estate of Harry A. McCormick, without the intervention of the plaintiff María McCormick."

Therefore, because the plaintiff herein was not summoned and because she failed to intervene in the judicial partition made, said partition was annulled. On the other hand, we may ask, can that judgment annulling the partition subsist partially if some of the heirs were neither summoned nor heard? We do not think so. The reason is that in a case like this the judgment can not be considered divisible. The partition is either valid or void. Its nullity having been decreed, the judgment is indivisible and must affect all the heirs who intervened therein. When it was reversed by this court as to the defendants Kierman McCormick, the same became ineffective as to all of the defendants.

In *Vázquez* v. *Santalís*, 26 P.R.R. 614, where an extrajudicial partition made by virtue of a public deed was involved, we held that:

". . . A partition deed, interlocked as it is, must be an entirety. At least one who relies on the destruction of a part must show that that part can be segregated without destroying the whole. Here everybody, complainant, defendant and heirs in general, accepted and acted under the partition deed. No action can lie in this case which does not contemplate the destruction of the whole testamentary proceedings."

By analogy this same doctrine was applied in *Torres et al.*, v. *Succession of Rosaly*, 28 P.R.R. 412, dealing with a compromise approved by a judgment rendered in an action claiming an inheritance by stipulation of the parties, and it was therein stated that:

"That stipulation gave to the compromises the character of a whole with parts so connected that it was impossible to destroy or

annul one part without affecting the whole; therefore, whatever the procedure followed to set aside the judgment of July 24, 1917, approving the compromises, besides the heirs of Rosaly, who were actually heard, it was necessary to hear also the Garriga minors and attorneys Flores Colón and Tormes, but they were not given a hearing. *There being a lack of interested parties, the proceedings were not sufficient in law for setting aside the judgment as prayed for; therefore the order appealed from is fatally defective.* See *Vázquez v. Santalís et al.,* 26 P.R.R. 614.'' (Italics ours.) See also *Torrellas v. Santos et al.,* 32 P.R.R. 84 and *Díaz et al., v. Balseiro & Georgetti et al.,* 27 P.R.R. 32.

Likewise, we are of the opinion that the judgment which annulled the partition is a unit which can not be held valid as to some heirs and void as to others. The judgment of nullity of the partition purported to restore the property of the estate to its original state of indivision. Since that judgment was reversed because the court acted without jurisdiction as to some of the heirs, the same can not subsist as to the other heirs, inasmuch as that would be equivalent to holding that the former retained a right of ownership over a specific part which was allotted to them while, on the other hand, the latter would only have an abstract right over all of the property of the inheritance including that part awarded to the former.

Section 1021 of the Civil Code provides that ''A division legally made confers upon each heir the exclusive ownership of the property which may have been awarded to him.'' Commenting on § 1068 of the Spanish Civil Code, equivalent to § 1021 of our code, Manresa states as follows:

''The law indicates the main effect which results from the partition whenever the same is legally made. Such effect is the conferring, upon each heir, of the exclusive ownership of the property which is specifically alloted to him. Confer means to grant; to bestow, give; the word *ownership* indicates the actual or presumptive right, real or apparent, conferred over the hereditary estate; and it is classified as exclusive or absolute in contradistinction to the ownership prior to the partition, which was a joint ownership, and therefore a limited one, because an abstract right or an (indeterminate)

indefinite one, shared with others, and thus limited, may be substituted by a concrete, (determinated) definite, exclusive and absolute right.

"Thus, by inheritance is meant the transmission of the universality of the estate and of the rights of the deceased; but the transmission is made of the whole estate indeterminately to all the heirs, and for that reason, none of the heirs may be called the exclusive owner of any particular thing of the estate. At the time of making the partition, the right of each heir is individualized and determined, and it is when certain objects or rights are allotted to one of said heirs in payment or in representation of his assets or of his undivided quota, that he acquires the exclusive ownership of those specific rights or objects, and loses any share in the objects or rights of the estate awarded to the others." (7 Manresa, Civ. Code, 5th ed., p. 788.)

By its very nature this is not a case wherein the court, according to § 190 of the Code of Civil Procedure [3] could have rendered a judgment against one or more of the defendants leaving the action to proceed against the others precisely because a separate judgment did not lie, in view of the fact that the determination of whether the partition was "legally made" is the principal object of this action. The judgment deciding such a question must necessarily be considered as a unit, and, therefore, if that judgment has been reversed in so far as it affects some of the heirs, it must be likewise set aside in its entirety.

The order appealed from must be reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

---

[3] "In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others whenever (a) several judgment is proper."